IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARK ENGEL, <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | ) CIVIL ACTION NO. 1:20-00082-KD-N <br> ) |
| LIBERTY INSURANCE <br> CORPORATION, *et al.*, <br>     Defendants. | ) <br> ) <br> ) |

## **REPORT AND RECOMMENDATION**

This action is before the Court on the motion to partially dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 50) filed by Defendant Liberty Insurance Corporation ("Liberty"). The assigned District Judge has referred said motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (4/24/2020 electronic reference). In accordance with the Court's briefing schedule (Docs. 61, 67), the Plaintiff, Mark Engel, has timely filed a response (Doc. 65) in opposition to the motion, and Liberty has timely filed a reply (Doc. 73) to the response. Liberty's motion is now under submission and ripe for disposition. Upon due consideration, and for the reasons explained herein, the undersigned will **RECOMMEND** that Liberty's motion be **DENIED**.

### I. *Procedural Background*

Engel initiated this case by filing a complaint in the Circuit Court of Mobile County, Alabama, on December 21, 2019 (Doc. 1-2, PageID.25-83). On February 12, 2020, the case was removed to this Court under 28 U.S.C. § 1441(a).[1] Engel's

---

[1] The Court subsequently denied Engel's motion to remand under 28 U.S.C. §

complaint initially named Liberty Mutual Insurance Company ("LMIC") as a defendant, but on April 3, 2020, the Court substituted Liberty for LMIC on Engel's unopposed motion, and set a deadline for Liberty to respond to the complaint. (*See* Docs. 24, 25, 43). Liberty timely filed the present motion to dismiss.

Count I of the three-count complaint alleges a claim for negligence against all defendants arising out of allegedly improper mitigation and repair work performed on Engel's house. Counts II and III allege claims for breach of contract and bad faith, respectively, against Liberty only, arising out of Liberty's alleged refusal to pay for additional repairs to the house under a contract of insurance between Engel and Liberty. Liberty's present motion requests dismissal of the claims against it in Counts I and III under Rule 12(b)(6).[2]

## II.   *Legal Standards*

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a court must "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' … [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned,

---

1447(c). (*See* Docs. 28, 32, 39).

[2] After close of briefing on the present motion, Engel moved for leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2). (*See* Doc. 76). The Court denied that motion as untimely under the Federal Rule of Civil Procedure 16(b) scheduling order. (*See* Doc. 86). Accordingly, Engel's state court complaint remains the operative pleading in this action.

the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citations and some quotations omitted). *See also Duty Free Americas*, 797 F.3d at 1262 (Courts " 'afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action.' " (quoting *Franklin v. Curry*, 738 F.3d 1246, 1248 n. 1 (11th Cir. 2013) (per curiam))).

> "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In other words, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted). Put another way, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Moreover, " 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' " *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S at 678). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Importantly, … courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 679 (quoting *Twombly,* 550 U.S. at 567)).[3]

### III.  *Well-Pleaded Allegations*

Engel's house in Semmes, Alabama, sustained water damage "from pipes in the house" on June 30, 2017. (Doc. 1-2, PageID.27, ¶¶ 15 – 16). At the time, the house was insured by Liberty. (*Id.*, ¶ 17; PageID.35). After being contacted, Liberty sent an

---

[3]  While Engel's complaint was subject to Alabama's pleading rules when he filed it in state court, the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). Accordingly, his complaint must satisfy federal pleading rules in order to withstand a Rule 12(b)(6) motion to dismiss.

Engel's brief invokes *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), and its progeny for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46). His reliance on *Conley* is misplaced, as "*Twombly* … retired *Conley*'s 'no set of facts' test in favor of" the plausibility standard outlined above. *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010).

adjustor to evaluate the damage. (*Id.*, ¶ 18). After the adjustor confirmed the damage to the house was covered by the insurance policy, Liberty retained the services of Defendants Complete DKI and Alacrity Services to perform mitigation work on the house, which included drying out the moisture and, by Alacrity, performing repairs. (*Id.*, PageID.27-28, ¶¶ 19-20). Liberty also hired Defendant Donan Engineering Company, Inc. to review the repairs and ensure they were done properly.[4] (Doc. 1-2, PageID.29, ¶ 32). Engel took up residence in the house after he was informed that all repairs had been made and the house was ready to be occupied. (*Id.*, PageID.28, ¶ 21).

Over the next few months, nails began popping out of the wall, doors and cabinets came apart, sheetrock tape came undone, and warps formed in the drywall and on the floor. (*Id.*, ¶ 22). Engel obtained a contractor's estimate of the cost to repair the drywall, hired an engineer to prepare a report on how the previous work had been improperly performed and how the damage would continue to worsen as a result, and retained the services of a contractor to determine what steps were needed to properly repair the house. (*Id.*, ¶¶ 22-24). Engel then contacted Liberty requesting that the house be properly repaired. (*Id.*, ¶ 25). Liberty sent an inspector to look at the house, determined there were no issues, and refused to pay for further repairs, despite Engel providing them a copy of the engineer's report. (*Id.*). Engel alleges that

---

[4] The claims against Defendants Donan Engineering and Lowe's, against which no substantive allegation was made, have previously been dismissed under Rule 12(b)(6). (*See* Docs. 53, 63). Engel has also voluntarily dismissed his claims against Defendant Worley Claims Services, LLC, against which no substantive allegation was made, under Federal Rule of Civil Procedure 41(a). (*See* Docs. 37, 49).

his house "has decreased substantially in value and is unmarketable[,]" and that "it has become difficult to live in the property due to these improper repairs and continuous damage that is occurring." (*Id.*, PageID.30-31, ¶¶ 34, 46).

### IV. *Analysis*

#### a. **Negligence (Count I)**

Count I alleges that Liberty, "by undertaking control of the mitigation of the repairs and review of those repairs, negligently oversaw the entire process[,]" and that it "had a duty to properly oversee the repairs and insure [Engel]'s home was put back in the condition it was in prior to the damage occurring." (*Id.*, PageID.30, ¶ 35). Liberty argues that Count I is essentially asserting a cause of action against it for negligent handling of an insurance claim, which must be dismissed because the Alabama Supreme Court has refused to recognized such a cause of action.[5] In support, Liberty cites *Calvert Fire Ins. Co. v. Green*, 180 So. 2d 269 (Ala. 1965), and its progeny. Engel argues *Calvert Fire* does not foreclose his negligence claim. Upon careful consideration, the undersigned agrees with Engel.

---

[5] "A federal court sitting in diversity applies the substantive law of the state in which it sits, including that state's choice of law." *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1444 (11th Cir. 1991). Engel has never disputed that Alabama law applies to his claims in response to prior motions to dismiss, and Liberty and Engel agree that Alabama law applies to the claims at issue in the present motion. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) ("[A] party waives its opportunity to rely on non-forum law where it fails to timely provide—typically in its complaint or the first motion or response when choice-of-law matters—the sources of non-forum law on which it seeks to rely."); *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (per curiam) ("Foreign law is a fact to be pleaded and proved; and when the contrary is not alleged, the law of the sister state will be assumed to be the same as [the forum state's] law.").

The Alabama Supreme Court has explained that "*Calvert Fire*, a first party action, restricted the negligen[t handling of an insurance claim] cause of action ... to third party actions only." *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 5 (Ala. 1981) (per curiam). The court "reaffirm[ed] this position" in *Chavers*, noting that *Calvert Fire* had "expressly rejected any cause of action based upon an insurer's negligence in handling *direct* claims"[6] under the following rationale:

> "...As to liability insurance, the company owes to the insured a duty independent of the contract not to injure him, and when, from its negligent failure or refusal to adjust a claim, or from fraud or other bad faith, he sustains damages *other than damages covered by the insurance contract*, then an action in tort would be appropriate. The contract here was to pay a loss covered under the policy. *The insured is damaged by the failure to pay only in the sense that any creditor is damaged by the debtor's failure to pay a matured debt, but for this an action in tort will not lie since the remedy is on the contract.* Its liability under ... the policy is to pay the amount of the loss in excess of the deductible amount...."

*Chavers*, 405 So. 2d at 5 (emphasis added) (quoting *Calvert Fire*, 180 So. 2d at 272 (quoting *Leonard v. Fireman's Ins. Co. of Newark, N.J.*, 100 Ga. App. 434, 111 S.E.2d 773 (1959))).[7]

---

[6] *See also Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995) ("[T]his Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims." (citing *Chavers*, 405 So. 2d 1; *Calvert Fire*, 180 So. 2d 269; *Armstrong v. Life Insurance Co. of Va.*, 454 So. 2d 1377, 1380 (Ala. 1984) ("[T]his court has refused to recognize a negligence cause of action for improper handling of insurance claims." (citing *Calvert Fire*), *overruled on other grounds*, *Hickox v. Stover*, 551 So. 2d 259, 264 (Ala. 1989) (per curiam); *Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337 (Ala. 1993 ("This Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims." (citing *Armstrong*, 454 So. 2d at 1380; *Chavers*, 405 So. 2d at 5; and *Calvert Fire*)).

[7] *See also Hamner v. Mut. of Omaha Ins. Co.*, 270 So. 2d 87, 90 (Ala. Civ. App. 1972)

Drawing all reasonable inferences in Engel's favor, the undersigned agrees that his Count I claim against Liberty is not the sort of "negligent handling" claim foreclosed by *Calvert Fire*. Engel is not claiming in Count I that Liberty negligently failed "to pay a loss covered under the policy" – i.e., the original water damage.[8] Rather, he is claiming that, in the course of covering a loss under the insurance

("There is little question but that the line of distinction between actions in tort and contract is thin and often nebulous in many instances. The courts of this State have recognized that under certain circumstances, for the breach of a contract there may be available either an action of assumpsit or one in tort. The theory on which the cases have been decided is often difficult to discern, but basically way be stated that if there is failure or refusal to perform a promise the action is in contract; if there is a negligent performance of a contractual duty or the negligent breach of a duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or tort. In the latter instance, whether the action declared is in tort or contract must be determined from the gist or gravamen of the complaint. Basically, the line of division between the actions of contract and tort in such instances is that of nonfeasance and misfeasance. If there is a defective performance there is a breach of contract and may be also a tort." (citations omitted) (quoted with approval as a "seminal Alabama case" in *Ex parte Certain Underwriters at Lloyd's of London*, 815 So. 2d 558, 562-63 (Ala. 2001)).

[8] *Cf. Kervin*, 667 So. 2d at 705-06 ("Kervin and Hose Headquarters first contend that Southern Guaranty failed to obtain independent estimates of their damage and that that failure constituted an intentional failure to determine whether there was a legitimate or arguable reason to refuse to pay their claim; in other words, they claimed a bad faith failure to investigate their claim … Kervin and Hose Headquarters … argue that the summary judgment was improper as to the negligent or wanton investigation claim. However, this Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims."); *Pate*, 628 So. 2d at 345 ("Pate contends that the insurers failed to pay because of a poor company policy of not paying until receipt of proof of disability during the previous claim period. He argues that the delays were exacerbated by Roosevelt's sending forms to Associates instead of directly to him and by Independent's lack of specific claim-filing procedures, which he says resulted in a misdirection of forms and in payment delays. []This Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims. Thus, we affirm the summary judgments for the insurers as to Pate's claims based on negligence." (citations omitted)).

contract at issue by paying for work to mitigate and repair the initial water damage, Liberty negligently oversaw that work, resulting in shoddy repairs that caused further damage to Engel's house. Thus, Engel's allegations more plausibly indicate that Liberty violated its "duty independent of the contract not to injure" its insured, causing Engel to sustain "damages other than damages covered by the insurance contract." As *Calvert Fire* stated, and *Chavers* reiterated, "an action in tort would be appropriate" in such circumstances.[9]

Accordingly, Liberty's motion to dismiss is due to be **DENIED** as to Count I.

### b. Bad Faith (Count III)

Count III alleges that Liberty has refused pay for the defective repairs without "any reasonably legitimate, arguable, or debatable reason[,]" has "intentionally failed to determine whether or not there was any basis for its refusal[,]" and has "acted in bad faith in refusing to pay or take affirmative action to make the repairs." (Doc. 1-2,

---

[9] The undersigned recognizes that such a claim may be inconsistent with Engel's Count II and III claims that Liberty breached its insurance contract by refusing to pay to correct the defective repair work. Such inconsistency, however, is immaterial for purposes of Rule 12(b)(6), as Federal Rule of Civil Procedure 8(d)(3) permits the pleading of inconsistent claims. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273–74 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims. Thus, UTC's complaint is not subject to dismissal simply because it alleges that both Mazer, individually, and West–Hem committed the tortious conduct, even if it would be impossible for both to be simultaneously liable (which question of impossibility we need not, and do not, resolve)." (footnote omitted)); *Brookhaven Landscape & Grading Co. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir.), *adhered to*, 681 F.2d 734 (11th Cir. 1982) (per curiam) (Under predecessor to Rule 8(d), "[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency … A party may not, however, recover separately on inconsistent theories when one theory precludes the other or is mutually exclusive of the other.").

PageID.33, ¶¶ 55-57). Liberty argues that Engel has failed to plausibly plead his Count III bad faith claim in accordance with Rule 8. The undersigned disagrees.

In Alabama,

> the tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. Thus, for the tort of bad-faith refusal to pay, requirements (a) through (d) represent the "normal" case. Requirement (e) represents the "abnormal" case. But the tort has always been *one.*

*State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (citations and quotations omitted).

The complaint alleges that Liberty refused to pay for damages resulting from the improper mitigation and repair work it provided, and that such refusal constituted a breach of its contract of insurance with Engel. (*See* Doc. 1-2, PageID.32, ¶ 48).[10] Engel alleges that Liberty knew "there was no legitimate, arguable, or debatable reason to deny" that request, and that it "intentionally failed to determine whether or not there was any basis for its refusal to correct [the] repairs[,]"despite Engel having presented Liberty with an engineer's report detailing necessary repairs and a contractor's estimate of those repairs. (*See id.*, PageID.32-33, ¶¶ 54-56).[11] The

---

[10] Liberty has not cited to any provision in the insurance contract that contradicts this allegation.

[11] "[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

undersigned finds that these allegations, accepted as true and construed in the light most favorable to Engel, plausibly state a claim for bad faith under Alabama law.[12]

Accordingly, Liberty's motion to dismiss is due to be **DENIED** as to Count III.

---

[12] As Liberty's reply correctly notes, Engel's response brief (Doc. 65) is replete with additional factual allegations not contained within the complaint. In considering Rule 12(b)(6) dismissals, "it is generally true that the 'scope of the review must be limited to the four corners of the complaint.' " *Speaker*, 623 F.3d at 1379 (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Pretrial amendment of a pleading must be accomplished in accordance with Federal Rule of Civil Procedure 15(a) and cannot be effected through a brief in response to a motion to dismiss[,]" *Kennedy v. Warren Properties, LLC*, No. CV 17-00114-KD-N, 2017 WL 5896252, at *9 (S.D. Ala. Nov. 7, 2017) (citing cases), *report and recommendation adopted*, 2017 WL 5894542 (S.D. Ala. Nov. 29, 2017); *cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."), and as noted previously, see n.2, *supra*, Engel has already been denied leave to amend his complaint after the close of briefing on the present motion. Accordingly, the undersigned has not considered any of the extraneous factual allegations in Engel's brief in reaching the conclusions herein.

Engel has also attached a number of exhibits to his response brief, none of which were attached as exhibits to his complaint. *Cf.* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Generally, "[i]f, on a motion under Rule 12(b)(6) … , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[, and a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Eleventh Circuit Court of Appeals "has recognized an important qualification to this rule where certain documents and their contents are undisputed: 'In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.' " *Speaker*, 623 F.3d at 1379 (quoting *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). Because the undersigned has found that the operative complaint is sufficient to withstand the present motion to dismiss, it is unnecessary to consider whether the exhibits attached to Engel's response can be properly considered without converting the present motion into one for summary judgment, and the undersigned excludes them from consideration of the present motion.

## V. *Conclusion & Recommendation*

In accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** that Liberty's Rule 12(b)(6) motion to partially dismiss (Doc. 50) be **DENIED**.

**DONE** this the 16th day of December 2020.

/s/ *Katherine P. Nelson.*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1*,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.